EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Petitioner,

v.

PAN AMERICAN WORLD AIRWAYS, Respondent.

No. M–18–304.

United States District Court,
S.D. New York.

Jan. 4, 1984.

---

E.E.O.C. by Sandy Hom, Daniel Williams, Paul Brenner, New York City, for petitioner.

Townley & Updike by Kenneth J. McCulloch, James D. Madigan, III, New York City, for respondent.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Familiarity with all prior proceedings in this matter on the part of the reader is assumed.

Pursuant to Section 7 of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and § 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, the Equal Employment Opportunity Commission ("EEOC") sought an order from this Court directing Pan American World Airways, Inc. ("Pan Am") to comply with the terms of a subpoena duces tecum issued on January 14, 1983. The EEOC had initiated an investigation in response to about 13 separate employee complaints of age based discrimination with respect to the supervisory work force practices of Pan Am at its John F. Kennedy International Airport facility ("JFK"). Specifically, the complaints charged that since January 1980 Pan Am had engaged in a systematic practice of age based discrimination in executing its "Reduction in Force" ("RIF") program, whereby older, more experienced supervisors have been terminated or intimidated into retirement while younger, less experienced and lower paid supervisory personnel have been retained and promoted.

Pan Am resisted the subpoena, contending that it imposed an excessive burden on a struggling business seeking to cope with a changed business climate and rehabilitate itself, and also on the ground that much of the information sought was irrelevant and the scope was excessively broad and unrelated to the level of corporate discretion under investigation. In addition, Pan Am asserted to this Court that the statistical information sought by Part II of the subpoena was not a valid sample of the supervisory work force under investigation, and therefore a "useless fishing expedition." Pan Am also contended that the subpoena should be limited because its scope was inconsistent with the published "ADEA Case Processing Procedures" of the EEOC, and argued in a moving fashion to this Court that the tremendous bulk of data demanded by this subpoena, and the manpower necessary to accumulate this information would pose an unreasonable and excessive burden on its already precarious financial state.

This Court by a Memorandum and Order dated March 23, 1983 reached the following conclusion:

"In subpoena enforcement proceedings, absent a showing that the investigating agency is without authority, or the information sought irrelevant, or that the de-

mand itself is too indefinite, or compliance too burdensome, the court will not restrict the investigatory power granted the EEOC by Congress. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 [70 S.Ct. 357, 368, 94 L.Ed. 401] (1950); *Federal Trade Commission v. Rockefeller*, 591 F.2d 182 (2d Cir.1979); See Rule 45(b), F.R.Civ.P. and Title VII, 42 U.S.C. § 2000e–8. Those concerned with the burdensome effect of such demands on commerce should address themselves to Congress for relief.

For the purposes of this motion, it is conceded that the EEOC is acting within its statutory authority and that the information demanded by Part 2 of the subpoena is sufficiently definite."

This Court concluded that the information sought was relevant and that the EEOC was acting within its investigatory powers to examine it. This Court also held that while the subpoena was burdensome, the Court was unable to find that compliance would *"unduly* disrupt or seriously hinder normal operation" of Pan Am, thereby imposing an *excessive* burden upon it. The Court directed Pan Am to permit the EEOC to make an on site examination of all relevant records, and held that following such discovery in place, production of any additional information necessary to comply with the provisions of Part II of the subpoena should be compelled only upon further formal application to the Court.

This determination was apparently unsatisfactory to both parties. However, no appeal was taken, and the process of compliance therewith commenced.

Some two months later and on June 23, 1983, the Supreme Court decided the case of *Immigration and Naturalization Service v. Chadha,* —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). In *Chadha,* the Court held that the one-house legislative veto of an exercise by the Executive Branch of authority delegated by Congress (to the Attorney General) was unconstitutional and that such a provision was severable from the initial delegation, and void.

Possibly the Court in *Chadha* was unaware of the far reaching possibilities of its sudden discovery that the time honored process of legislative veto, authorized since 1932 in 295 separate Congressional procedures in 196 different statutes, was unconstitutional.[1] Perhaps it did not foresee the consequent disruption to ongoing litigation. In any event, the Court made no attempt to deal with the issue of whether its newly declared rule was retrospective, and the related issue of whether all such delegations remained valid, with only the reserved veto power stricken as void.[2]

It was only a matter of time before litigants situated as is Pan Am would discern that the one house veto provision of the Reorganization Act of 1977 was also unconstitutional. The delegation of power from Congress to the President therein contained in turn permitted the President in 1978 to reorganize the Executive Branch of Government so as to transfer enforcement authority for the ADEA and the Equal Pay Act to the EEOC from the Department of Labor, which he did.

*Chadha* was followed shortly by a motion to dismiss a lawsuit in the United States District Court for the Southern District of Mississippi, *EEOC v. Allstate Insurance Co.*, 570 F.Supp. 1224 (S.D.Miss., 1983). This action involved a suit under the Equal Pay Act, enforcement of which was transferred from the Department of Labor to the EEOC by the same Reorganization Plan No. 1 of 1978 which also transferred the ADEA enforcement function to the EEOC. Judge Barbour dismissed that action by summary judgment for lack of

---

**1.** Justice Powell concurring noted that "the breadth of this holding gives one pause."

**2.** This Court believes that a respectable argument can be made that *Chadha* should not be applied retrospectively. Some prudential considerations must affect such sudden far sweeping constitutional pronouncements by the Court. We note that neither the notorious *Miranda* rule nor *Mapp* were applied retrospectively. To have done so would have produced utter chaos. *Chadha* invites chaos. The Supreme Court could have considered this problem, but it did not. *Cf. Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

capacity to sue, holding that the Reorganization Act of 1977 was unconstitutional. His opinion finds standing on the part of the defendant employer to raise the issue, concludes that the provisions here considered are not severable, and that *Chadha* must be applied retroactively.

The Court in *Allstate* also held (at 1228): "Does the fact that no veto was interposed alter the requirements of bicameralism and presentment?

The question presented by this case is not directly answered in *Chadha*. *Chadha* did emphasize the importance of preserving the separation of powers between the executive and legislative branches of government [footnote omitted]. Moreover, the Court noted that '[t]o allow Congress to evade the strictures of the Constitution and in effect enact Executive proposals into law by mere silence cannot be squared with Art. I.' *Chadha*, [——] U.S. at [——] n. 22, 103 S.Ct. at 2787 n. 22. It is evident from the opinion in *Chadha* that 'every use of the legislative veto' is invalid [footnote omitted].

The fundamental problem with the legislative retention of veto power is that it places the executive in the position of legislating subject to a Congressional veto [footnote omitted]. In this sense it stands Art. I of the Constitution on its head. Congress had various tools by which it may control its grant of power, but 'Congress must abide by its delegation of authority until that delegation is legislatively altered or revoked.' *Id.* 103 S.Ct. at 2786. Because the Court in *Chadha* clearly sweeps with a broad stroke in its holding that the legislative one-house veto is unconstitutional, this Court must follow that precedent [footnote omitted] by holding that a retained one-house veto is unconstitutional even when not exercised."

The *Allstate* decision evoked a motion from Pan Am, heard by this Court on October 26, 1983, to vacate its prior decision enforcing the subpoena. This Court's view of the significance of the issue thus raised and Pan Am's position in the matter could be discerned from colloquy between counsel for Pan Am and the Court as follows:

"THE COURT: So it's your contention that the Department of Labor could enforce the Act in this case but that the EEOC couldn't?

MR. MADIGAN [Attorney for Pan Am]: That's correct.

THE COURT: Are you just quarreling about which bureaucrat is to pursue you? And supposing it were the conclusion of this court that you were right, wouldn't everything have to be held in abeyance until the bureaucrats could change? You get a different face with the same issues.

MR. MADIGAN: That may well be. .

\* \* \* \* \* \*

THE COURT: It's kind of a bootless motion isn't it? If you are right it wouldn't necessarily lead to vacating any of the orders. It would just simply change the identity of the persons who can pursue your client.

MR. MADIGAN: I think that presumes that an identical approach would be taken by a different agency, and I don't think that that is a fair presumption when we are merely at the stage of investigating some charges that have been filed.

I don't think it can fairly be stated that we would be before you right now with the Department of Labor instead of the EEOC if what we are describing had not transpired.

THE COURT: I'd like to understand why it would make any difference.

MR. MADIGAN: Because we wouldn't be subjected to this investigation and the expenses associated with it.

THE COURT: Are you suggesting that the Department of Labor doesn't conduct wasteful investigations?

MR. MADIGAN: I don't know whether the Department of Labor would or would not, and that is precisely the problem. I think that is merely a speculative notion. I don't think that the EEOC can stand before you and say that the Department of Labor would be proceeding in precise-

ly the same fashion. They haven't submitted at least anything that I have seen to indicate that such is the case other than to take the position. They haven't sought to include the Department of Labor.

\* \* \* \* .\* \*

THE COURT: You want to get into a Never-never-land where the court says that it belongs to the Department of Labor and the Department of Labor says, 'Oh, no, it should have stayed with the EEOC.'

MR. MADIGAN: I think it's the EEOC who hopes to have the Never-never-land result achieved. They are the ones who say ignore the unconstitutionality of the Reorganization Act, that no past, present, or future litigant can raise it because they say even if you were to find an agreement with our position, that it makes the entire act unconstitutional and that they have no authority, nevertheless, you should decide that it doesn't apply to this case or any other, and therefore it goes off into space somewhere.

\* \* \* \* \* \*

MR. MADIGAN: ... It's mere speculation to say the same result would obtain if it was a different agency.

THE COURT: All right, but your position is that if the other agency [Department of Labor] signs the subpoena, that you will comply with it?

MR. MADIGAN: That only one agency has the authority, and that we will recognize the one that we feel has the authority, and that is the Department of Labor."

The Court attempted to resolve the problem presented by *Chadha,* followed by *Allstate,* in a manner considered both fair and pragmatic. By its oral order and decision of October 26, 1983, this Court held:

"THE COURT: The court disposes of this application in the following fashion:

The court finds that the pendency of an appeal in the Fifth Circuit and a direct appeal to the Supreme Court in the Allstate case makes it inexpedient for this court at this time to grant the relief requested herein to the extent that it would require this court to consider de novo a complex and difficult constitutional issue.

The court recognizes that any delay in this proceeding, if it is a meritorious proceeding, could redound to the detriment of public policy and also perhaps to the detriment of individual employees of Pan American or former employees of Pan American.

The Court believes that a rational disposition of this motion is as follows, and the court now makes the following directions:

Compliance with the subpoena duces tecum issued by the petitioner, Equal Employment Opportunity Commission, EEOC, dated March 23, 1983, is from henceforward stayed in all respects unless and until that subpoena or a document substantially identical as to form shall be issued to Pan American World Airways bearing the signature of the Secretary of Labor or his duly authorized deputy for the purpose of issuing enforcement subpoenas in those statutory matters as to which the Secretary of Labor has jurisdiction to investigate and enforce compliance with such statutes.

The court does not in any way attempt to prejudge the issue of whether the Secretary of Labor will issue such a subpoena or will not do so. The court does not at this point consider whether the Secretary of Labor can associate [with] himself in the investigation the staff members of Equal Opportunity Employment Commission, but I think it's quite obvious that if he wishes to, he may, and absent a court order staying any such subpoena when issued, it should be complied with; and the court does not have to decide what might happen tomorrow but I am giving you an indication.

The court declines to dismiss the EEOC's underlying petition herein or directing the EEOC to return to Pan Am the documents it has previously obtained because the court believes that one branch or another of the federal government will have and does have the continuing right to demand compliance with

the statutes and to investigate alleged cases of noncompliance, and that if in the final analysis it be adjudged that the decision in EEOC against Allstate is affirmed, that the government could be expected to retransfer these activities to the Department of Labor, [or] attempt to repass the Reorganization Act without violating the principles of the , Chadha case, so that in this court's view, the Equal Employment Opportunity Commission can continue to hold those documents and can continue to consider them for the benefit of whatever branch of the federal government shall ultimately obtain the lawful right to administer the act and enforce compliance with the act, and that in the interim it's not contested that the Secretary of Labor has the right to investigate and subpoena documents, and compel compliance, and if he does so, that should be permitted, and pending such time as he shall resolve to pursue the production and inspection of additional documents, compliance with the subpoena henceforward should be and it hereby is stayed."

Thereafter, by a motion heard December 20, 1983, the EEOC sought relief from this Court's oral order of October 26, 1983, essentially upon its conclusion that *Allstate* was wrongly decided. It appeared at the oral argument of that motion that *no attempt* had been made by the EEOC to have the Department of Labor join in the subpoena in the case of Pan Am, and thereby remove any question as to the legitimacy of this investigation. Instead, the EEOC concentrated its attack on the conclusion reached in the *Allstate* case and supported here by Pan Am. Apparently the reasons, if any there be, for failing to do so relate to turf consciousness among bureaucrats within different departments of the same branch of Government, with which this Court has little patience.

■ We concede at the outset of our discussion that the decision in *Allstate* is not binding precedent upon this Court. Indeed it would not be binding were its author appointed for this district. See *Farley v. Farley*, 481 F.2d 1009, 1012 (3rd Cir. 1973), which holds:

"[E]ven if [prior E.D.Pa. district court decision] had decided the precise issue, its holding is not a precedent binding on other courts. The decision of a three-judge court is entitled to no more weight than any other district court decision. See 1B J. Moore, Federal Practice ¶ 0.402[1] n. 29 at 62. Consequently, the [prior district court decision] is not necessarily binding on any other district court, *id.* at 61, and does not invariably have to be followed in the Eastern District. *Id.* at 58–59."

See also, *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982) (law of the case); *Aknin v. Phillips*, 424 F.Supp. 104, 105 (S.D.N.Y.1976) (this court may disregard conflicting decision of the Third Circuit).

However, this does not suggest that the decision in *Allstate*, which gives thoughtful consideration to all aspects of this problem presently before us, should be disregarded. This is particularly true when there is no clear signal from the Supreme Court to assist the inferior courts in dealing with a host of foreseeable post-*Chadha* problems. Whether Judge Barbour is right or wrong in his analysis will depend entirely on the analysis of higher courts. No jurisprudential purpose will be served, and scarce judicial resources on all levels will be wasted if we, and every other district judge who happens to have an Equal Pay Act or ADEA lawsuit on his or her docket should immediately woo the Muse and set down a lengthy opinion having the same 50–50 chance of being right as the *Allstate* opinion has.

However, as Jimmy Durante used to say, "everybody wants to get inta de Act," and it was only a matter of time before another equal and coordinate district court found it desirable to add to the learning on the point. Familiarity with *Muller Optical Co. v. EEOC*, 574 F.Supp. 946, not yet reported (W.D.Tenn., November 10, 1983), is assumed. In *Muller Optical*, Judge Odell Horton reviewed the same issues dealt with in *Allstate, supra*, and expressed his dissatisfaction, as he had the right to do, with that decision, holding, correctly, that

"[t]hat decision, of course, is not binding on this Court," (fn. 1 at p. 950) and describing his Court as "sailing in (sic) largely uncharted seas." (*Id.*)

The Court in *Muller Optical* went on to distinguish *Chadha* because with respect to the Reorganization Act the one-house veto had *not* been exercised. Indulging in what it characterized as an "unavoidable attempt at clairvoyance," the court considered the issue of severability, reaching a different conclusion than *Allstate,* for reasons expressed therein which this Court finds no more and no less rational and persuasive than the reasoning relied on in *Allstate* to support a contrary result.

The order denying an injunction, in *Muller Optical,* like the judgment of dismissal in *Allstate,* was appealable, and indeed an appeal to the Sixth Circuit was docketed on November 29, 1983. Indeed, as to *Allstate,* we have been informed by counsel that the Supreme Court has already noted probable jurisdiction for direct appeal, and a separate appeal has been docketed in the Fifth Circuit on October 19, 1983.

Flush with victory after *Muller Optical,* the EEOC presented the instant motion to be relieved from this Court's order of October 26, 1983.

 That motion, heard December 20, 1983, is denied. This Court perceives no significant change in circumstances merely because of the subsequent issuance of the *Muller Optical* opinion. We think our temporary resolution of the issue as of October 26, 1983 was then and remains now reasonable, practical and fair. No legitimate excuse is proffered for failing to proceed thereunder. Although the Secretary of Labor has never been asked to authorize the subpoena, this Court regards as highly speculative Pan Am's suggestion, or hope, that he would not do so if asked, because of the claimed burdensome and meritless character of the underlying grievance.

The appeal as of right which could have been taken from our October 26, 1983 order was not taken. There is no significant change in the relevant facts, merely by the issuance of the *Muller Optical* opinion.

Were respondent genuinely concerned with this particular investigation, it could have obtained ratification and participation from the Secretary of Labor, more than two months ago. Alternatively, it may seek legislative relief from the Congress, either limited to this enforcement function, or extending to a general amnesty or ratification of all that has been done since 1932 in reliance on the presumed constitutionality (or more likely, the presumed non-justiciability) of the one-house veto. Indeed it could move for reconsideration by the Supreme Court of the *Chadha* case itself, so as to obtain a stay similar to that granted in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), or a declaration of non-retroactivity. Or, it can litigate *Allstate* and/or *Muller Optical* to their ultimate unpredictable denouement.

Apparently, as our hearing of December 20, 1983 made clear, the EEOC will do none of these. Rather, it has developed an apparent strategy to wage total litigation on eleven or twelve different fronts wherever and whenever it can, requiring district courts in every circuit to relitigate the issue of *Allstate—Muller Optical* so that each Circuit may rule separately thereon, with ultimate recourse to the Supreme Court to resolve the foreseeable conflict in the Circuits. This appears to me to be unnecessary, unfair to the employers and employees alike, and wasteful as well as expensive. We should not allow our scarce judicial resources to be squandered in such a profligate fashion.

Motion denied.

So Ordered.