# Authority of the Equal Employment Opportunity Commission to Conduct Defensive Litigation

In general, the Attorney General has plenary authority over the supervision and conduct of litigation to which the United States is a party. Courts have narrowly construed statutory grants of litigation authority to agencies to permit such power only when the authorizing statutes are sufficiently clear and specific to ensure that Congress intended an exception to the general rule.

The litigation authority of the Equal Employment Opportunity Commission is limited to that which is specifically provided by statute, namely, enforcement actions brought against private sector employers. 42 U.S.C. §§ 2000e-4(b), 2000e-5, 2000e-6. Accordingly, the Commission may not independently defend suits brought against it in connection with its federal sector administrative and enforcement and adjudicative functions, or actions brought against it by its own employees challenging Commission personnel decisions. Such suits are to be handled by attorneys under the supervision of the Attorney General.

June 21, 1984

MEMORANDUM OPINION FOR THE ACTING ASSISTANT ATTORNEY GENERAL,
CIVIL DIVISION

This responds to your memorandum seeking the views of this Office regarding the role that the Equal Employment Opportunity Commission (EEOC or Commission) plays in defending suits brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended, against the EEOC in connection with its Federal sector administrative enforcement and adjudicative responsibilities, or in actions by its own employees challenging Commission personnel decisions. You have advised us that it has been the position of the Civil Division that the EEOC lacks independent litigating authority when it is sued as a result of personnel decisions regarding Federal employment. The EEOC contends that it can represent itself in court any time it is named as defendant.

As discussed below, we conclude that, in view of the Attorney General's plenary authority over litigation on behalf of the United States and the narrow construction necessarily accorded exceptions to this authority, the EEOC's litigating authority in Title VII suits is limited to that which is specifically provided by statute, namely, enforcement actions brought against private sector employers. *See* 42 U.S.C. §§ 2000e-4(b), 2000e-5, 2000e-6. Likewise, the Commission's general grant of litigating authority, as set forth in § 2000e-4(b) and Reorganization Plan No. 1 of 1978, 92 Stat. 3781 (*reprinted in* 42 U.S.C.

146

§ 2000e-4 note (Supp. V 1981)), cannot fairly be read to embrace litigation involving challenges to its personnel decisions.[1] Nevertheless, while we conclude that the Commission lacks the authority to litigate independently in these cases, we believe that Commission attorneys may assist Department of Justice, or other duly authorized, attorneys in such cases, or otherwise participate in such litigation under the general supervision of the Attorney General.[2]

## I. Background

### A. The Attorney General's Litigating Authority

Questions concerning the litigating authority of Executive Branch agencies necessarily must begin with a recognition of the Attorney General's plenary authority over the supervision and conduct of litigation to which the United States, its agencies and departments, or officers thereof, is party. This plenary authority is rooted historically in our common law and tradition, see Confiscation Cases, 74 U.S. (7 Wall.) 454, 458–59 (1868); The Gray Jacket, 72 U.S. (5 Wall.) 370 (1866); and, since 1870, has been given a statutory basis. See 28 U.S.C. §§ 516, 519.[3] See generally United States v. San Jacinto Tin Co., 125 U.S. 273 (1888). The rationales underlying this grant of plenary authority to the Attorney General are many. The most significant are the need to centralize the government's litigation functions under one authority to ensure (1) coordination in the development of positions taken by the government in litigation, and consideration of the potential impact of litigation upon the government as a whole; and (2) the ability of the President, as head of the Executive Branch, to supervise, through the Attorney General, the various policies of Executive Branch agencies and departments as they are implicated in litigation. Because of his government-wide perspective on matters affecting the conduct of litigation in the Executive Branch, the Attorney General is uniquely suited to carry out these functions. See United States v. San Jacinto Tin Co., 125 U.S. at 278–80. See also Report of the Attorney General's Task Force on Litigating Author-

---

[1] Although you did not specifically request our views regarding the Commission's authority to conduct defensive litigation arising out of its enforcement responsibilities against private sector employers under Title VII, the Equal Pay Act, 29 U.S.C. § 206(d), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., because the issue appears to remain unsettled between the Department and the Commission, we have provided our views in Part II.B in an effort to provide a comprehensive analysis of the Commission's authority to conduct defensive litigation on its own behalf.

[2] We understand that in October 1980, the Assistant Attorney General for the Civil Division reached an agreement with the Commission's Deputy General Counsel that the Civil Division "would, as a matter of practice, permit EEOC to defend itself in these lawsuits."

[3] 28 U.S.C. § 516 provides:

Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 519 provides:

Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States Attorneys, Assistant United States Attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

*ity* (Oct. 28, 1982)); "The Attorney General's Role as Chief Litigator for the United States," 6 Op. O.L.C. 47 (1982).

Notwithstanding Congress' determination that the litigating functions of the Executive Branch be centralized in the Attorney General, the Attorney General's "plenary" authority over litigation involving the United States is limited to some extent by the "except as otherwise authorized by law" provisions contained in 28 U.S.C. §§ 516, 519. Nevertheless, mindful of the considerations supporting such centralization, the courts have narrowly construed statutory grants of litigating authority to agencies in derogation of the responsibilities and functions vested in the Attorney General, and have permitted the exercise of litigating authority by agencies only when the authorizing statutes were sufficiently clear and specific to ensure that Congress indeed had intended an exception to the general rule. *See, e.g., Case* v. *Bowles,* 327 U.S. 92 (1946); *ICC* v. *Southern Railway Co.,* 543 F.2d 534 (5th Cir. 1976), *aff'd,* 551 F.2d 95 (1977) (en banc); *FTC* v. *Guignon,* 390 F.2d 323 (8th Cir. 1968). *See generally Report of the Attorney General's Task Force on Litigating Authority, supra*; 6 Op. O.L.C. 47, *supra.*

Moreover, such exceptions are generally construed to grant litigating authority only with respect to the particular proceedings referred to in the statutory provision, and not as a broad authorization for the agency to conduct litigation in which it is interested generally. *Id. See also* "Litigation Authority of the Equal Employment Opportunity Commission in Title VII Suits Against State and Local Governmental Entities," 7 Op. O.L.C. 57 (1983).

In short, the general rule regarding litigating authority on behalf of the United States is that it is presumed to be vested exclusively in the Attorney General, to be exercised under the general supervision of the Attorney General or his delegees within the Department of Justice,[4] unless such authority is clearly and unambiguously vested by statute in an officer other than the Attorney General.

*B. The EEOC's General Litigating Authority*

1. Title VII of the Civil Rights Act

The general litigating authority of the EEOC is set forth in Title VII of the Civil Rights Act of 1964. Section 705 provides in pertinent part:

> (1) . . . The General Counsel shall have responsibility for the conduct of litigation as provided in sections 2000e-5 and 2000e-6 of this title. The General Counsel shall have such other duties as the Commission may prescribe or as may be provided by law and shall concur with the Chairman of the Commission on the appointment and supervision of regional attorneys. . . .

---

[4] 28 U S.C. § 510 authorizes the Attorney General "from time to time [to] make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General."

(2) Attorneys appointed under this section may, at the direction of the Commission, appear for and represent the Commission in any case in court, provided that the Attorney General shall conduct all litigation to which the Commission is a party in the Supreme Court pursuant to this subchapter.

42 U.S.C. §§ 2000e-4(b)(1), (2). In addition, § 2000e-4(g)(6) authorizes the Commission "to intervene in a civil action brought under § 2000e-5 of this title by an aggrieved party against a respondent other than a governmental agency or political subdivision." Sections 2000e-5 and 2000e-6, referred to above, constitute the enforcement provisions for Title VII of the Act and set forth the enforcement responsibilities of the Commission and the Attorney General, respectively. Section 2000e-5 authorizes the Commission, after investigating allegations of unlawful employment practices, filing charges and failing "to secure from the respondent a [timely] conciliation agreement acceptable to the Commission," to bring civil actions "against any respondent *not* a government, governmental agency, or political subdivision named in the charge . . . or to intervene in such civil action upon certification that the case is of general public importance." 42 U.S.C. § 2000e-5(f)(1) (emphasis added). In cases in which the respondent is a "government, governmental agency, or political subdivision," litigation authority rests with the Attorney General. *Id.*[5] In addition, § 2000e-5(i) authorizes the Commission to "commence proceedings to compel compliance" in any "case in which an employer, employment agency, or labor organization fails to comply with an order of a court issued in a civil action brought under [§ 2000e-5]." Section 2000e-6, as amended by Reorganization Plan No. 1 of 1978, 92 Stat. 3781 (*reprinted in* 42 U.S.C. § 2000e-4 note (Supp. V 1981)),[6] limits the government's authority to engage in public sector "pattern or practice" enforcement litigation to the Attorney General. *See generally* 7 Op. O.L.C. 57.

In a 1983 memorandum to the Civil Rights Division, we opined that the limitations on the General Counsel's authority which are set forth in § 2000e-4(b)(1) necessarily are incorporated into the "litigating authority" granted Commission attorneys in § 2000e-4(b)(2). *See* 7 Op. O.L.C. at 61–62. We

---

[5] As noted above, the Commission retains authority to perform *pre*-litigation functions, *e.g.*, investigations, the filing of charges, and the securing of voluntary compliance and conciliation measures, with respect to public sector employers.

[6] Although the transfer of litigation authority in public sector "pattern or practice" suits from the EEOC to the Attorney General was accomplished pursuant to the President's authority under the Reorganization Act of 1977, 5 U.S.C. § 901, an Act which contains an unconstitutional legislative veto provision, see INS v. Chadha, 462 U S. 919 (1983), the Department has taken the position that the legislative veto provision is severable from the remaining provisions of the Act granting the President reorganization authority *See EEOC* v. *Hernando Bank*, 724 F.2d 1188 (5th Cir. 1984); *EEOC* v *Jackson County*, No. 83–1118 (W.D. Mo. Dec. 13, 1983); *Muller Optical Co.* v. *EEOC*, 574 F. Supp 946 (W.D. Tenn. 1983), *appeal pending*, No. 83–5889. *See also EEOC* v. *City of Memphis*, 581 F. Supp. 179 (W.D. Tenn. 1983) (holding that Congress has ratified the EEOC's authority under Reorganization Plan No. 1 of 1978). *But see EEOC* v. *Westinghouse Electric Co* , No. 83–1209 (W.D. Pa. Jan. 5, 1984); *EEOC* v. *Allstate Insurance Co.*, 570 F. Supp. 1224 (S.D. Miss. 1983), *appeal dismissed*, No. 83–1021, 52 U.S.L.W. 3889 (June 11, 1984), *appeal pending*, No. 83–4652 (5th Cir.). *See also EEOC* v. *Pan American World Airways*, 576 F. Supp. 1530 (S.D.N.Y. 1984).

concluded that to construe § 2000e-4(b)(2) without regard to § 2000e-4(b)(1) would grant Commission attorneys authority which supersedes that of the General Counsel, under whose supervision they work, pursuant to § 2000e-4(b)(1) and, moreover, that such a construction would be contrary to the general rule that exceptions to the Attorney General's plenary litigating authority are to be narrowly construed. *See also Report of the Attorney General's Task Force on Litigating Authority, supra.*

In a memorandum to this Office, the Legal Counsel to the Commission disputed this analysis.[7] Although the Legal Counsel's argument is not entirely clear, she appears to contend that the Commission was granted broad litigating authority when it was created by Title VII of the Civil Rights Act in 1964, which has not been diminished by subsequent amendments, *i.e.*, § 2000e-4(b)(1), to the Act. Regarding the limitations on the General Counsel's authority which are set forth in § 2000e-4(b)(1), the Legal Counsel opined that "section [2000e-4](b)(1) involves a different matter than section [2000e-4](b)(2), *i.e.*, the enforcement function the Commission acquired in 1972," adding that "[n]o support appears in the legislative history for the argument that [§ 2000e-4](b)(1) was intended to limit the broad grant of authority contained in [§ 2000e-4](b)(2)."

The Legal Counsel correctly notes that in 1964, the newly created Commission was granted authority to appoint attorneys who "may, at the direction of the Commission, appear for and represent the Commission in any case in court," Pub. L. No. 88–352, § 705(h), 78 Stat. 241, 259 (1964), but at that time the only matters on which the Commission was authorized to appear in court were those in which it commenced proceedings against private-sector employers to compel compliance with court orders issued in civil actions brought by aggrieved parties under § 2000e-5, *see* § 706(i), 78 Stat. at 261 (codified at 42 U.S.C. § 2000e-5(i)).[8] Thus, although the Commission was given broad "enforcement" authority under the Act, including the authority to investigate allegations of unlawful employment practices and to undertake efforts to secure voluntary compliance, with the exception noted above of suits to compel compliance with court orders secured by aggrieved parties, none of the Commission's powers under the Act at the time of its creation in 1964 entitled the Commission to conduct litigation on its own behalf. Rather, the Commission's involvement in litigation under the Act was limited to "refer[ring]

---

[7] Until recently, the EEOC's Office of the Legal Counsel was a subdivision of the Office of the General Counsel, headed by the "Associate General Counsel, Legal Counsel Division." We understand that, pursuant to a reorganization, the Legal Counsel Division has been removed from the General Counsel's Office, establishing it as a separate office under the Chairman's control. Although we take no position on the Commission's authority to effect such a reorganization, we do not believe that through such a reorganization, litigating authority vested by statute in the General Counsel could be transferred to an official outside of the General Counsel's control. Nor do we believe that such authority could be "created" or "inferred," if previously nonexistent, and vested in the newly constituted Legal Counsel Division.

[8] Although the 1964 Act authorized only aggrieved parties to bring unlawful employment discrimination suits under § 2000e-5, subsection (e) of that provision (presently 42 U.S.C. § 2000e-5(f)) did authorize the court, "in its discretion, [to] permit the Attorney General[, upon timely application,] to intervene in such civil action if he certifies that the case is of general public importance."

150

matters to the Attorney General with recommendations for intervention in a civil action brought by an aggrieved party under section 706 [42 U.S.C. § 2000e-5], or for the institution of a civil action by the Attorney General under section 707 [42 U.S.C. § 2000e-6, in cases involving allegations of a 'pattern or practice' of unlawful conduct], and to advis[ing], consult[ing] and assist[ing] the Attorney General on such matters." § 705(g)(6), 78 Stat. at 259.

In 1972, the Act was amended to strengthen the Commission's enforcement authority by establishing a General Counsel and authorizing him to bring actions in federal courts under certain provisions of the Act against private sector employees. *See* generally Pub. L. No. 92–261, 86 Stat. 103 (1972).[9] Section 706 of the Act, 42 U.S.C. § 2000e-5, was amended to grant the Commission authority to "bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge," and to intervene, at the court's discretion, in an action brought by an aggrieved party against a nongovernmental employer "upon certification that the case is of general public importance." *See* 42 U.S.C. § 2000e-5(f). In addition, enforcement authority in "pattern or practice" litigation pursuant to § 707 of the Act, 42 U.S.C. § 2000e-6, was transferred from the Attorney General to the Commission, effective March 24, 1974, by the 1972 amendments.[10]

To assist the Commission in the performance of these expanded enforcement functions, Congress provided for the appointment, by the President, of a General Counsel, whose responsibilities would include "the conduct of litigation as provided in 42 U.S.C. sections 2000e-5 and 2000e-6 . . . [and] such other duties as the Commission may prescribe or as may be provided by law." 42 U.S.C. § 2000e-4(b)(1). *See also* S. Rep. No. 681, 92d Cong., 2d Sess. 20 (1972). It is clear from the legislative history of the 1972 amendments that Congress intended to commit all litigating functions of the agency to the supervision of the General Counsel, and moreover, that the General Counsel's litigating functions were to be "as provided in sections 706 and 707 of the Act." 118 Cong. Rec. 7169 (1972) (section-by-section analysis of H.R. 1746). Thus, to construe § 2000e-4(b)(2) as providing a residual source of litigating authority, unrelated to § 2000e-4 (b)(1), which either expands upon the General Counsel's limited authority provided in § 2000e-4(b)(1) or constitutes an independent grant of litigating authority to Commission attorneys without regard to

[9] Prior to 1972, the position of General Counsel was not specifically provided for by statute, although the Commission generally appointed an attorney to assume the role of supervising the Commission's legal staff in the performance of its legal duties. During consideration of the 1972 amendments, several bills to empower the Commission to issue cease and desist orders, and to create an "independent" General Counsel, who would be appointed by the President and be outside of the control of the Chairman and the Commission, and who would perform prosecutorial functions before such a quasi-adjudicative Commission, were debated at length. Although the bills to vest the Commission with quasi-adjudicative authority were defeated in favor of those granting the Commission authority to file civil actions in federal court, the provisions for a Presidentially appointed General Counsel remained. *See generally* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 2d Sess., *Legislative History of the Equal Employment Opportunity Act of 1972* (1972).

[10] Section 5 of Reorganization Plan No. 1 of 1978, *supra*, transferred enforcement authority under § 707 in public sector cases back to the Attorney General.

the General Counsel, would fly in the face of well-established rules of statutory construction[11] as well as the general statutory and policy constraints discussed above on construing grants of litigating authority.[12]

[11] The Legal Counsel's interpretation is inconsistent with several general rules of statutory construction, including the rules (1) that sections of a statute should be construed "in connection with every other part or section so as to produce a harmonious whole," 2A *Sutherland Statutory Construction* § 46.05 (4th ed. 1973), (2) that adoption of an amendment is evidence that the legislature intends to change the provisions of the original bill, *see* 2A *Sutherland, supra*, § 48.18; and (3) that statutes *in pari materia* should be construed together, and if there exists "an irreconcilable conflict between the new provision and the prior statutes . . . the new provision will control as it is the better expression of the legislature," 2A *Sutherland, supra*, § 51.02. *See generally Western Pac. R. Corp.* v. *Western Pac. R. Co.*, 345 U.S. 247 (1953); *Bindczyck* v. *Finucane*, 342 U.S. 76 (1951).

[12] The Legal Counsel has cited two cases in support of the argument that § 2000e-4(b)(2) constitutes a general grant of litigating authority to Commission attorneys to conduct defensive litigation on the Commission's behalf, notwithstanding the limitations on the General Counsel's authority in § 2000e-4(b)(1).

The first case, *Falkowski* v. *EEOC*, 719 F.2d 470 (D.C. Cir. 1983), is an action brought against the Commission and the Department of Justice by a disgruntled former EEOC employee seeking reimbursement for past legal expenses and a guarantee of future legal representation in two suits brought against her by a subordinate during her tenure as director of one of the Commission's field offices. In granting the government's motion for summary judgment — the government was represented by Department of Justice attorneys, with EEOC attorneys on the brief — the court stated in a footnote that EEOC attorneys could not have represented the employee, Falkowski, in the earlier litigation because of "the irreconcilable conflict of interest that existed between the agency and Ms. Falkowski in that case." 719 F.2d at 478 n.14. The court noted that the Commission and Falkowski were adverse parties in litigation arising out of the same underlying dispute, and that it would have been "highly improper for EEOC attorneys to undertake such dual representation." *Id.* That the court appears to assume that EEOC attorneys would be representing the Commission in such litigation does not in any way negate Department of Justice participation in and supervision of the litigation on behalf of the Commission. The conflict of interest arises simply from the fact of the EEOC attorneys' *involvement* in the Commission's defense, *i.e.*, from having participated in the case's preparation. Thus, it can hardly be said that the *Falkowski* case stands for the proposition that the Commission's attorneys are statutorily authorized to conduct defensive litigation, independently of the Attorney General, on the Commission's behalf.

The second case cited by the Legal Counsel is *Dormu* v. *Walsh*, No. 73–2014 (D.D.C. Mar. 5, 1975), *aff'd mem. sub nom. Dormu* v. *Perry*, 530 F.2d 1093 (D.C. Cir.), *cert. denied*, 429 U.S. 849 (1976). *Dormu* involved a series of cases filed by a former EEOC employee alleging, *inter alia*, Title VII violations, 42 U.S.C. § 2000e-16, by the Commission. In the particular case cited by the Commission, Dormu sought, and was denied, preliminary injunctive relief restraining the Commission from discharging him, pending the resolution of his claims on the merits. Dormu moved to disqualify the EEOC General Counsel from representing the Commission, on the ground that "[u]nder 28 U.S.C. § 516 only the Department of Justice can conduct any litigations [sic] in which the United States, an agency, or officer thereof is a party." The General Counsel opposed the motion, citing his authority "to represent the Commission in any case in court, 42 U.S.C. § 2000e-4(b)(2)" and the fact that the Department of Justice had referred the case to the Commission, as it was "the practice of the [Department] when the Attorney General [was] served, to refer Title VII cases filed against the Commission to the Commission so that the Commission's Office of General Counsel may defend the suit." The district court denied Dormu's motion and, on appeal, the court in a footnote of its memorandum opinion stated that "[a] ruling on the motion was deferred and the issue was reserved for the merits panel. The statute referred to in the text [42 U.S.C. § 2000e-16(c)] and 42 U.S.C. § 2000e-4(b) rebut appellant's contention on this matter." The merits panel, by order, and without a published opinion, dismissed Dormu's action.

We do not believe that the *Dormu* case provides any credible support for the Legal Counsel's argument. First, Commission attorneys, as the General Counsel acknowledged, were defending the suit, "as was the practice," pursuant to a specific "delegation" of litigation authority from the Department of Justice — the Commission did not purport to rely solely on its statutory authorization. Equally significant is the fact that the court, although ruling against Dormu's motion, did not, in a published opinion, indicate the reasons for its ruling, so that its precedential value is extremely limited. Finally, we cannot fail to note that in the papers filed by the Commission in *Dormu*, the General Counsel did not proffer a distinction, pressed upon us now by the Legal Counsel, between his authority under § 2000e-4(b)(1) and that of Commission attorneys under § 2000e-4(b)(2). Rather, the General Counsel, albeit erroneously, considered himself, as the chief attorney for the Commission, as deriving authority from both §§ 2000e-4(b)(1) and (b)(2).

152

2. Litigating Authority Acquired by the EEOC Under Reorganization Plan
   No. 1 of 1978

In addition to its enforcement responsibilities under Title VII, in 1978 the
EEOC assumed enforcement responsibilities relative to several additional fair
employment laws — the Equal Pay Act (EPA), 29 U.S.C. § 206(d), the Age
Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq.*, the
Rehabilitation Act, 29 U.S.C. § 791, and Title VII of the Civil Rights Act as
applied to federal workers, 42 U.S.C. § 2000e-16. Pursuant to Reorganization
Plan No. 1 of 1978, all enforcement authority which had been vested previ-
ously in the Administrator of the Wage and Hour Division of the Department of
Labor, the Secretary of Labor, and the Civil Service Commission regarding
enforcement of the EPA, the ADEA, the Rehabilitation Act, and Title VII of
the Civil Rights Act was transferred to the EEOC. *See* Reorganization Plan No.
1 of 1978, 42 U.S.C. § 2000e-4 note, *supra.* To the extent that any of those
statutes granted independent litigating authority to the persons or agencies
charged with their enforcement, a proposition which is the subject of consider-
able disagreement between the Department of Justice and the EEOC,[13] such
authority was transferred to the Commission by the 1978 Reorganization Plan.
   With this understanding of the EEOC's general litigating authority, we turn
now to the specifiç questions raised in your memorandum to us.

## II. EEOC'S Authority to Conduct Defensive Litigation

You have asked us to examine the Commission's role in defending suits
brought "in connection with [the Commission's] Federal sector administrative
enforcement and adjudicative responsibilities" under Title VII of the Civil
Rights Act, and in actions brought "by its own employees challenging Com-
mission personnel decisions." As noted above, the Commission's general
litigating authority is derived from two sources: § 705 of Title VII, 42 U.S.C.
§ 2000e-4(b), and Reorganization Plan No. 1 of 1978, *supra.* Because the
Commission's Federal sector enforcement authority under Title VII, the EPA,
the ADEA, and the Rehabilitation Act was transferred to the EEOC from the
Civil Service Commission by the 1978 Reorganization, we must examine the
Civil Service Commission's litigation authority regarding these statutes prior
to the Reorganization.

*A. Litigation Authority Inherited from the Civil Service Commission*

Although the 1978 Reorganization Plan transferred to the EEOC all func-
tions related to the enforcement of Title VII of the Civil Rights Act against
federal government employers which were previously vested in the Civil

---

[13] *See Report of the Attorney General's Task Force on Litigating Authority, supra,* Compendium at 40
("[f]or the present time, the Civil Division and the Commission have 'agreed to disagree' [about the
Commission's independent litigating authority post-1978]").

153

Commission, *see* 42 U.S.C. § 2000e-16, litigation was not among the Civil Service Commission's functions under § 2000e-16.[14] Enforcement litigation authority pursuant to § 2000e-16 was retained by the Attorney General.[15] Although § 2000e-16(c) provides that "an employee . . . aggrieved by the final disposition of his complaint . . . may file a civil action as provided in section 2000e-5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant," whether an agency may represent itself in such an action depends upon the nature and scope of the particular defendant agency's litigating authority.[16] As noted above in Part I.A., statutory grants of litigating authority to agencies, in derogation of the Attorney General's plenary authority, must be construed narrowly to permit the exercise of such authority only when clearly and specifically provided for. The EEOC's litigating authority under its authorizing statute, 42 U.S.C. § 2000e-4, is limited, as discussed above, to the initiation of, and intervention in, civil actions against private sector employers.

Likewise, the Civil Service Commission's functions under the ADEA and the Rehabilitation Act, currently vested by statute in the EEOC, did not include litigation on its own behalf of either an enforcement or a defensive nature. Section 633a(b) of Title 29 authorizes the EEOC

> to enforce the provisions of [29 U.S.C. § 633a](a) [the ADEA as applied to federal employees] through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section. *The Equal Employment Opportunity Commission shall issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.*

---

[14] The Civil Service Commission's functions under § 2000e-16 included, *inter alia*, the review of agencies' national and regional equal employment opportunity plans, the promulgation of rules and regulations "as it deems necessary and appropriate to carry out its responsibilities under this section," and the issuance of final agency orders and appropriate remedies regarding discrimination complaints by federal employees.

[15] Section 2000e-16(d) provides that "[t]he provisions of sections 2000e-5(f) through (k) of this title, as applicable, shall govern civil actions brought hereunder." As discussed above, § 2000e-5 vests litigation authority regarding public sector employers, including the federal government, in the Attorney General. This vesting of authority in the Attorney General facilitates the enforcement process by allowing the Attorney General, if the EEOC is unsuccessful in reaching a satisfactory conciliation agreement, to perform the dispute- resolution functions delegated to him by the President in Executive Order 12146, *reprinted in* 28 U.S.C. § 509 note, in lieu of suing other Executive Branch agencies in court. With respect to independent agencies, and other governmental entities within the scope of § 2000e-16's coverage which are not a part of the Executive Branch, the Attorney General may, in his discretion, sue if necessary to achieve a satisfactory result.

[16] We recognize that in such actions by federal employees, the EEOC, whether or not it is the defendant employer agency, may be named as a co-defendant because of its role in processing employee complaints in the administrative process. In such cases the Attorney General is most likely to be representing the defendant agency; to permit the Commission to represent itself in such circumstances, independently of the Attorney General, would create the risk of conflict in the courts as to the position of the United States in such litigation, *i.e.*, the Executive speaking with two conflicting voices.

(Emphasis added.) In addition, the EEOC is required to "provide for the acceptance and processing of complaints of discrimination in Federal employment on account of age," to receive notices of intent to sue by aggrieved individuals prior to their filing a civil action in federal district court, and to "promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice." 29 U.S.C. §§ 633a(b)(3), (d). The EEOC's functions under the Rehabilitation Act are similarly limited to voluntary conciliation and compliance measures. *See id.* § 791.

We thus conclude that the Commission lacks the authority to defend itself, independently of the Attorney General, against suits brought under Title VII, the ADEA, and the Rehabilitation Act in connection with its federal sector administrative enforcement and adjudicative responsibilities, including suits brought under those provisions by its own employees challenging Commission personnel decisions. However, this conclusion does not preclude Commission attorneys from appearing as co-counsel with Department of Justice Attorneys, as is the case with attorneys from other "client" agencies, filing joint briefs, or otherwise actively participating in the Commission's defense, so long as such activities are carried out under the general supervisory authority of the Attorney General or his delegees within the Department of Justice.

B  Litigation Authority Inherited From the Secretary of Labor and the Administrator of the Wage and Hour Division, Department of Labor

Having addressed the question of the Commission's authority to defend itself against suits brought under Title VII, the ADEA and the Rehabilitation Act in connection with its federal sector administrative enforcement and adjudicative responsibilities, including suits initiated by its own employees, we now consider the remaining issue of the EEOC's authority to defend itself in suits arising in connection with its newly acquired enforcement responsibility in the private sector under the EPA and the ADEA. As we have seen in the context of the EEOC's general litigating authority statute, 42 U.S.C. § 2000e-4, and the authority transferred to the EEOC from the Civil Service Commission pursuant to Reorganization Plan No. 1 of 1978, *supra*, the Commission's authority to litigate on its own behalf is limited to certain types of enforcement actions, as distinguished from matters involving defensive litigation. Likewise, to the extent that "litigating authority" was vested in the Secretary of Labor and the Administrator of the Wage and Hour Division by the EPA and the ADEA and transferred to the Commission by the 1978 Reorganization Plan, a proposition regarding which the Department has expressed serious doubts, it was strictly of an offensive enforcement nature and cannot fairly be construed to encompass defensive litigation.

The Secretary of Labor's "litigation" authority under the EPA and the ADEA was limited to "the filing of a complaint" and to "bring[ing] . . . action[s]" under 29 U.S.C. §§ 206, 207, 215 and 217 to redress violations of the

155

acts on behalf of aggrieved complainants. 29 U.S.C. §§ 216(b), (c), 626(b). This Department has consistently taken the position, however, that such language, simply authorizing an agency to "file a complaint" or to "bring an action" is insufficient to establish independent litigating authority. *See Report of the Attorney General's Task Force on Litigating Authority," supra*; 6 Op. O.L.C. 47, *supra. See also ICC* v. *Southern Railway Co.*, 543 F.2d 534 (5th Cir. 1976), *aff'd*, 551 F.2d 95 (1977) (en banc). Even if these provisions had vested litigating authority in the Secretary of Labor, and by reference, in the EEOC, such "authority" would be limited to litigation of an offensive, rather than a defensive, nature. Moreover, whatever "litigation authority" the Commission inherited from the Administrator of the Wage and Hour Division was limited to "appear[ing] for and represent[ing] the [Commission] in any litigation, *but all such litigation shall be subject to the direction and control of the Attorney General.*" 29 U.S.C. § 204(b) (emphasis added).[17]

## Conclusion

After carefully reviewing the EEOC's authority pursuant to its general authorizing statutes and those pursuant to which it inherited authority from the Secretary of Labor, the Administrator of the Wage and Hour Division and the Civil Service Commission, we conclude that the Equal Employment Opportunity Commission lacks the authority to defend itself, independently of the Attorney General, in suits brought under Title VII of the Civil Rights Act in connection with its federal sector administrative enforcement and adjudicative responsibilities, as well as in suits brought by its own employees challenging Commission personnel decisions. Our conclusion is compelled by the language of the statutes authorizing the Commission's fair employment enforcement activities, as well as the general reservation of litigating authority on behalf of the United States, unless otherwise expressly provided for, to the Attorney General, which is mandated by 28 U.S.C. §§ 516, 519.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[17] Notwithstanding our view that the EEOC did not acquire any litigating authority from the Civil Service Commission, the Secretary of Labor or the Administrator of the Wage and Hour Division under these statutes by operation of the 1978 Reorganization Plan, the EEOC has consistently maintained that it has authority to conduct both offensive and defensive litigation on its own behalf under the statutes for which it acquired enforcement responsibilities. Although the Department of Justice has continued to oppose EEOC's assertions of such claims, an agreement was reached in 1979 between the Department's Civil Division and the Commission whereby the Department would continue to conduct the defensive litigation on behalf of the Commission, with appropriate input from Commission attorneys.