Ann **BAUM**, Plaintiff,

v.

## **VILLAGE OF CHITTENANGO** et. al., Defendants.

### No. 5:00–CV–1516.

United States District Court, N.D. New York.

Oct. 16, 2003.

---

O'Hara, O'Connell Law Firm (James P. Evans, Esq., of counsel), Syracuse, NY, for plaintiff.

Hancock, Estabrook Law Firm (John T. McCann, Esq., of counsel), Syracuse, NY, for defendants.

1. Chittenango's motion also sought production of a clinical interview and history, and the results and interpretation of two psychological tests, both of which also formed the bases for her expert's opinion. Baum has since supplied those items, and that aspect of Chittenango's motion is now moot. *See Baum Ltr. Brf., Dkt. No. 64 at p. 1, fn. 1.*

*Decision and Order*

SHARPE, United States Magistrate Judge.

## I. *Introduction*

Pending are cross-motions to compel document production by plaintiff, Ann Baum, and by the defendants (hereinafter, "Chittenango"). Baum seeks production of an administrative transcript, and Chittenango seeks letters prepared by Baum's attorney that were given to her trial expert.[1] Chittenango opposes production because the transcript is equally available to Baum, and Baum opposes production because of the work-product doctrine.

For the following reasons, Chittenango's motion is granted and Baum's denied.

## II. *Background*

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and this court's scheduling order, Baum disclosed the report of John H. Wohlers, Ph.D., her trial expert. *See Dkt. No. 63, Ex. A ("Wohlers' Rpt.").* Wohlers identified the information he used to conduct his evaluation and prepare his report, including, *inter alia,* "[a] review of the history of Ms. Baum's case and the nature of injuries, prepared by [James P. Evans, Esq.] on September 11, 2002, and an Addendum to that history prepared by [James P. Evans, Esq.] on September 23, 2002." *Wohlers' Rpt. at 1* (alterations added).[2] Citing Rule 26(a)(2)(B), Chittenango sought production of the Evans letters, and Baum declined, citing the work-product doctrine. Having reviewed the letters, the court concludes that they were unquestionably prepared in anticipation of litigation.

The transcript relates to an arbitration hearing preceding Baum's discharge. The Village hired a court reporter to prepare a transcript, and Baum refused to share the costs. After the hearing, the arbitrator or-

2. The documents have been submitted by Baum for *in camera* review. They are two letters written by Evans to Wohlers on September 11 and 23, 2002.

dered the Village to lend a copy to Baum's attorney in order to prepare an appeal. The order required the lawyer to return the transcript with the brief, and he did so. Because Baum refused to pay, she agreed that the transcript would not be used for any other purpose. She now seeks a production order, and Chittenango responds that it is not required to subsidize her litigation and the transcript is equally available to her.

## III. Discussion

### A. Work–Product Doctrine and Expert Disclosure

■ At the heart of the dispute over Evans' letters is the tension between the work-product doctrine as articulated by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and the 1970 and 1993 amendments to Rule 26 of the Federal Rules of Civil Procedure. The court begins with *Hickman* and Rule 26, and then turns to an analysis of the cases interpreting them.

#### 1. Hickman and the History of Rule 26

In *Hickman*, the Supreme Court articulated the work-product doctrine as the basis for precluding discovery of attorney-generated work in anticipation of litigation, observing:

> ... [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be relevant from irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference ... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in preparation of cases for

trial. The effect on the legal profession would be demoralizing. And the interests of the clients and cause of justice would be poorly served.

*Id.* at 510–11, 67 S.Ct. 385; *see also, E.E.O.C. v. Carrols Corporation*, 215 F.R.D. 46 (N.D.N.Y.2003). An exception applies if an adversary can demonstrate particularized need, and undue hardship in obtaining disclosure from other sources. *Hickman* at 511–12, 67 S.Ct. 385. The Court subsequently recognized that special care should be taken to protect an attorney's mental impressions, conclusions, opinions and legal theories. *Upjohn Company v. U.S.*, 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). This particular category is frequently referred to as "core work-product." *See e.g., Manufacturing Administration and Management Systems, Inc. v. ICT Group, Inc.*, 212 F.R.D. 110, 114 (E.D.N.Y.2002).

In 1970, Rule 26 of the Federal Rules of Civil Procedure was amended to create new expert obligations and to codify the work-product doctrine. *See Fed.R.Civ.P. 26; Advisory Committee's Explanatory Statement Concerning 1970 Amendments to Discovery Rules, Fed.R.Civ.P. 26, 28 U.S.C.A, p. 13; and, Advisory Committee Notes (1970); see also, Upjohn* at 398, 101 S.Ct. 677 (work-product doctrine codified). Rule 26(b) was restructured to resolve judicial uncertainty regarding whether *Hickman's* work-product or Rule 34's "good cause" standard applied to document production. *See Rule 26(b)(3) (1970)* [3]; *Advisory Committee's Explanatory Statement Concerning 1970 Amendments to Discovery Rules, Fed.R.Civ.P. 26, 28 U.S.C.A, p. 13, and Advisory Committee Notes (1970).*

The amended rule clarified that *Hickman* controlled discovery of trial preparation materials, retained the particularized need and undue hardship test, and adhered to *Hickman's* admonition that special protection should be afforded to an attorney's mental impressions, conclusions, opinions and legal theories (core work-product). *Rule 26(b)(3)*

---

**3.** There are substantial variations in the structure and text of the Rules from 1970 to present, and care must be exercised when analyzing judicial decisions and the Committee Notes regarding a particular version. This is especially true here since there is divergent authority on all aspects of the issue, as is amply demonstrated by the parties' briefs.

*(1970)*. As to trial expert discovery, the Rule was specifically limited by the provisions of Rule 26(b)(4)(A)(i) pertaining to such experts. *Id.* In turn, Rule 26(b)(4)(A)(i) permitted opposition discovery, through interrogatories, of the identity of trial experts, and the facts, opinions and a summary of the grounds for each of their opinions. *Rule 26(b)(4)(A)(i)* (1970). The court could permit discovery by means other than interrogatory, but it was also authorized to limit that discovery through a protective order precluding inquiry into certain matters. *Id. and Rule 26(c)* *(1970)*. Limiting its comment to discovery of trial preparation documents and things, and not experts, the Advisory Committee observed that 26(b)(3) continued to afford protection "against disclosure in such documents of mental impressions, conclusions, opinions, or legal theories concerning the litigation." *Advisory Committee's Explanatory Statement Concerning 1970 Amendments to Discovery Rules, Fed.R.Civ.P. 26, 28 U.S.C.A, p. 13.*

The changes were designed to respond to judicial decisions precluding expert disclosure which inevitably resulted in "the very evils that discovery ha[d] been created to prevent." *Fed.R.Civ.P. 26(b)(4), Advisory Committee Notes (1970)*. Absent disclosure, effective cross-examination or rebuttal is severely hindered because lawyers cannot anticipate an expert's approach or the data upon which the expert relied. Thus, the discovery process fails to accomplish its goals of narrowing the issues and avoiding surprise.

As to the potential conflict between the work-product doctrine and expert disclosure, the Committee observed, "These new provisions ... also reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine. *See United States v. McKay*, 372 F.2d 174, 176–77 (5th Cir.1967)." *Id., Advisory Committee Notes (1970)*. Given the facts of *McKay* (non-attorney work-product in the possession of a testifying expert), it is apparent that the Committee was not specifically addressing the precise issue here; namely, attorney work-product in the hands of an expert.

In 1993, Rule 26 was again amended to resolve differences in practice concerning expert disclosure. *Fed.R.Civ.P. 26, Advisory Committee Notes (1993)*. Rule 26(a)(2)(A)(B) specifically required disclosure of trial experts and their reports, the latter including, *inter alia*, "a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming the opinions; [and,] any exhibits to be used as a summary of or support for the opinions ..." *Fed.R.Civ.P. 26(a)(2)(B)* (alteration added). Regarding this report, the Committee stated:

> The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions—whether or not ultimately relied upon by the expert—are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

*Fed.R.Civ.P. 26(a)(2), Advisory Committee Notes (1993)*. Since the Rule now permits expert depositions, the Committee believed that full disclosure of the report and supporting documentation might obviate the need for depositions in the first instance. *Fed. R.Civ.P. 26(b)(4)(A), Advisory Committee Notes (1993)*. Despite the specific expert report disclosure requirement, Rule 26(b)(3) retained the *Hickman* attorney work-product limitation. Furthermore, the Rule also added a new subdivision which authorized an attorney to withhold trial preparation materials subject to a claim of privilege or "subject to protection as trial preparation material ..." *Fed.R.Civ.P. 26(b)(5)*. Addressing that subdivision, the Committee clarified that trial preparation material included those encompassed by the work-product protection. *Id., Committee Notes (1993)*.

### 2. *Judicial Precedent*

Having traced Rule 26's history, the question still remains: Does the work-product doctrine (Rule 26(b)(3)) protect attorney information supplied to an expert (Rule

26(a)(2)(B))? As the court has observed, judicial precedent is in the eye of the beholder since there are competing decisions on this issue. *See Fn. 3.* Nonetheless, this court concludes that Rule 26(a)(2)(B)'s expert disclosure requirement is paramount.

Many of the competing decisions and divergent views have already been conveniently summarized. *See Manufacturing Administration and Management Systems, Inc.,* 212 F.R.D. at 114 (E.D.N.Y.2002) (collecting cases and scholarly treatises); *Oneida, Ltd. v. U.S.,* 43 Fed.Cl. 611 (1999) (collecting cases); Christa L. Klopfenstein, Note, *Discoverability of Opinion Work Product Materials Provided to Testifying Experts,* 32 Ind. L.Rev. 481 (1999).

While this court does not necessarily share Judge Young's certainty that the history and language of Rule 26 *mandate* the conclusion that disclosure is required, it does agree that both the history and language strongly suggest as much. *Manufacturing Administration and Management Systems, Inc.* at 115; *cf. contra, Magee v. The Paul Revere Life Insurance Company,* 172 F.R.D. 627, 639–644 (E.D.N.Y.1997). Furthermore, this court agrees with his assessment that policy reasons support a bright-line rule of disclosure; namely: the attorney-expert dynamics in the litigation context, including effective cross-examination; the efficiency of the truth-finding process; and, the maintenance of the integrity of the work-product doctrine fostered by a simple attorney decision not to share such material with the expert. *Id.* at 116–118; *see also, Herman v. Marine Midland Bank,* 207 F.R.D. 26 (W.D.N.Y.2002); *Aniero· Concrete Company, Inc. v. N.Y.C. Sch. Construction Authority,* 94CIV.9111, 2002 WL 257685 (S.D.N.Y. Feb.22, 2002); *accord In re Pioneer Hi–Bred International, Inc.,* 238 F.3d 1370 (Fed.Cir.2001) (supporting disclosure) and *Bogosian v. Gulf Oil Corporation,* 738 F.2d 587 (3d Cir.1984) (supporting work-product protection, but in a

decision that pre-dated the 1993 amendment). Furthermore, such a rule fosters the pre-trial goals of narrowing the issues, avoiding surprise and dispensing with needless depositions.

In reaching this conclusion, the court is mindful of the respect that should be afforded the interests served by these competing principles. Nonetheless, it also believes that in the first instance, an attorney can protect his work by electing not to disclose it. Obviously, that tact is less conducive to a productive relationship between attorney and expert, but it is nonetheless a choice. On the other hand, experts have become a daily occurrence in federal courtrooms, and it is essential that a jury be able to evaluate their opinions on the basis of the information supplied them as they formulated those opinions. In the end, this court believes that Rule 26 has primacy over the resolution of this issue, and it has resolved it in favor of disclosure.[4]

■ Parenthetically, many courts have resolved the dispute by distinguishing facts supplied an expert from core work-product, ordering disclosure as to the first and denying it as to the second. *See Bogosian* at 595; *B.C.F. Oil Refining, Inc. v. Consolidated Edison Company of New York, Inc.,* 171 F.R.D. 57, 62–63 (S.D.N.Y.1997). The court's *in camera* review of Evans' letters principally reveals a factual history of Baum's problems. If the court did not adopt the bright-line disclosure rule, it would order disclosure in any event, finding that the letters do not supply core attorney work-product.

### B. *Transcript Production*

■ This issue is simply resolved. As Chittenango observes, compelling discovery from another is unnecessary when the documents sought are equally accessible to all. *Securities & Exchange Commission v. Samuel H. Sloan & Co.,* 369 F.Supp. 994, 995 (S.D.N.Y.1973). Furthermore, parties are

---

4. Federal rule making is governed by 28 U.S.C. § 2072, as amended ("Rules Enabling Act"). An Advisory Committee proposes and approves amendments, and they are then reviewed by a Standing Committee on Practice and Procedure. They are then circulated for public comment, and subsequent revisions, if any, are submitted to the United States Judicial Conference. If accepted by the Conference, they are submitted to the Supreme Court for approval. If the Supreme Court promulgates them, they are effective the following December unless Congress takes action to alter or reject them.

generally responsible for their own costs, and their adversaries are not obligated to finance their litigation. *Doe v. United States*, 112 F.R.D. 183 (S.D.N.Y.1986). The court certainly retains the discretion to equitably alter the cost burden, and order production under appropriate circumstances. *Tabron v. Lt. Grace*, 6 F.3d 147, 159 (3d Cir.1993).

Here, Baum tacitly suggests that she is financially strapped, but offers no details concerning assets or expenses, including the expense of the administrative record, that would permit the court to properly evaluate whether to exercise its discretionary powers. Furthermore, the defendants are public entities, and an order to produce would shift her expense to the taxpayers. Although Baum's current attorney may not have participated in the administrative proceedings, she did. Accordingly, she is fully familiar with the events that transpired. The court understands that the actual transcript may have utility at trial, including its use for impeachment purposes. Nonetheless, there is nothing on the face of Baum's application that causes the court to deviate from its past decisions requiring parties to bear their own costs.

### IV. *Conclusion*

For the reasons recited herein, it is hereby

**ORDERED** that Chittenango's motion to compel production of the Evans September 11 and 23, 2002, letters (*Dkt. No. 63*) is **GRANTED**, and it is further

**ORDERED** that plaintiff, Ann Baum, is **DIRECTED** to disclose the Evans September 11 and 23, 2002, letters to the defendants on or before **OCTOBER 23, 2003**, and it is further

**ORDERED** that the Clerk of Court file, under seal and pursuant to this decision and order, the September 11 and 23, 2002, letters of James Evans attached to plaintiff's motion (*Dkt. No. 64*) as Exhibit A, and it is further

**ORDERED** that the motion of plaintiff, Ann Baum, to compel disclosure of an administrative hearing transcript (*Dkt. No. 64*) is **DENIED**, and it is further

**ORDERED** that the Clerk of Court serve this decision and order on the parties by regular mail.

**SO ORDERED.**